UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

BRIAN D'AMATO and PAUL D'AMATO,
as partners of SIBRO i, SISBRO
II, and SISBRO III,                    NO.  CV-06-0314-EFS

            Plaintiffs,         **ORDER DENYING PLAINTIFFS' MOTION
                                FOR PARTIAL SUMMARY JUDGEMENT**

        v.

REGINA LILLIE and GERALD LILLIE,
as partners of SISBRO I, SISBRO
II, and SISBRO III,

            Defendants.

    On May 24, 2007, a hearing was held in the above-captioned matter.
David Duggan and Theresa Keyes appeared on behalf of Plaintiffs Brian
and Paul D'Amato; while Stephen Phillabaum and Ian Ledlin appeared on
behalf of Defendants Regina and Gerald Lillie.  Before the Court was
Plaintiffs' Motion for Partial Summary Judgment (Ct. Rec. 49).
Plaintiffs Paul and Brian D'Amato ask the Court to find there exists no
genuine issue of material fact regarding their claim that Defendants
Regina Lillie and Gerald Lillie breached the partnership agreement(s) by
overpaying themselves salaries (Count V of Plaintiffs' Amended
Complaint).  Defendants oppose the motion, contending that (1)
Plaintiffs lack capacity to seek relief because they have not met the

ORDER -- 1

derivative action requirements of RCW 25.10.560 or Idaho Code § 53-2-1002 and (2) the Court, and the trier of fact, after considering extrinsic evidence, will conclude that Defendants did not breach the partnership agreements by overpaying themselves.  After reviewing the submitted materials and relevant authority and hearing oral argument, the Court was fully informed.  This Order serves to memorialize and supplement the Court's oral denial of Plaintiffs' motion, finding there exist genuine issues of material fact as to whether the contracting parties intended the $300 salary cap for the general partners to be limited to a single weekly payment for the entire partnership or a payment for each salon.

**A.    Statement of Facts**[1]

The parties to this lawsuit are partners in SISBRO partnerships; as well as relatives.  Regina Lillie is the aunt of Brian D'Amato and Paul D'Amato, as she is the sister to their father, Anthony D'Amato.  (Ct. Rec. 50: Paul D'Amato Decl. ¶ 3.)

In December 1981, Anthony D'Amato sent a letter to Regina and Gerald Lillie, discussing the creation of a partnership to run a hair cutting salon and enclosing a draft of the partnership agreement.  (Ct.

---

[1] In ruling on a motion for summary judgment, the Court considered the facts and all reasonable inferences therefrom as contained in the submitted affidavits, declarations, exhibits, and depositions, in the light most favorable to Defendants, the party opposing the motion. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1972) (*per curiam*). The following factual recitation was created utilizing this standard.

ORDER -- 2

Rec. 58-2: December 19, 1981 letter.)  This letter indicates that Dennis Lillie is to supervise/manage the business, but that such activity is not to be done on a full-time basis so that Dennis need not be called an employee of the business.  *Id.*  The letter advises Regina and Gerald that:

> By making your own salaries equal to his, I think we will preserve fairness.  The enclosed agreement reflects our discussions that no one at this point will get any special treatment.  You both are taking all the risk, so normally you would get some special consideration (e.g., a larger share of the profits).  But since this is one store, and for all the reasons we discussed in Dennis' living room, it might be the better part of wisdom for everyone to be treated the same.

*Id.*

The parties agreed to create a partnership, and the Articles of the Sisbro Limited Partnership (hereinafter "Sisbro I Articles") (Ct. Rec. 58-4) were prepared and signed by all of the partners in 1982, which listed the ownership interests as follows:

The ownership interest of the partners shall be as follows:

| NAME | OWNERSHIP INTEREST |
|---|---|
| Gerald & Regina Lillie | 65% |
| Dennis & Gale Lillie | 10% |
| Robert & Norma Kraus | 5% |
| PB Investment Co. | 20% |

(Ct. Rec. 58-4 ¶ 8.)  PB Investment Co. handled the investment in Sisbro I on behalf of Brian D'Amato and Paul D'Amato because they were minors in 1982.  (Ct. Rec. 50: Paul D'Amato Decl. ¶¶ 2, 6, & 11.)  Gerald Lillie and Regina Lillie were identified as the general partners.  (Ct. Rec. 58-4 at 1.)  The Articles also state:

> RECITALS: The general and limted [sic] partners desire to enter into the business of retail hair care service and the sale of hair care products.  The general partners desire to manage and operate the business.  The limited partners desire to invest in the business and limit their liabilities.

(Ct. Rec. 58-4.)  The Articles describe the "Business of Partnership" as

ORDER -- 3

"[t]he purpose of the partnership is to engage in the business of cutting hair, providing related hair care services and selling hair care products." *Id.* ¶ 3.   Paragraph 10, entitled, "Salary of General Partners," specified:

> The general partners shall be entitled to a salary of SEVEN DOLLARS AND 50/100 CENTS ($7.50) per hour for time actually spent in the supervision and/or operation of the business, which salary shall not exceed THREE HUNDRED AND NO/100 DOLLARS ($300.00) per week. Salaries shall be paid monthly.   In addition the general partners shall be entitled to reimbursement for all necessary out-of-pocket expenses incurred in conducting the business of the partnership.   The time spent in attending training classes to learn the operation of the business shall not be included as salaried time.

A Certificate of Limited Partnership of Sisbro Limited Partnership was also prepared and filed with the State of Washington.   This Certificate states, "The character of the business to be transacted by the limited partnership will be the management, maintenance, and operation of a hair cutting salon." (Ct. Rec. 58-3.)

A hair cutting salon was opened and started in Spokane. (Ct. Rec. 58: Decl. Regina Lillie Decl. ¶ 31.)   Dennis Lillie was employed and managed the store with a salary of $1,200 per month. *Id.* ¶ 37.   This payment was treated as a guaranteed payment to partners in 1982 and 1983. *Id.* ¶ 38.

In July 1983, Anthony D'Amato approached Regina and Gerald Lillie and suggested that they work to open SuperCuts in Chicago. *Id.* ¶ 35. Anthony dictated a form letter to send to potential investors. *Id.* ¶ 35 & Ex. D.   This form letter indicates that the Lillies would receive a salary of $1,000 per month for overseeing each franchised salon. *Id.* Ex. D.   Apparently, they received no interest in a SuperCuts franchise in Chicago.

ORDER -- 4

The parties agreed to open another store. *Id.* ¶ 39. In conjunction, the parties planned on signing identical Articles of the Sisbro II Limited Partnership as was suggested by Anthony for the formation of Sisbro II. *Id.* ¶ 40 & Ex. E. However, Dennis Lillie passed away prior to the signing of the Articles. *Id.* ¶ 45; Paul D'Amato Decl. ¶ 8. Dennis' interest was divided amongst the other partners, and the remaining partners signed a nearly identical document entitled Articles of Sisbro II Limited Partnership in 1984, which were altered simply to show the ownership interests had changed. (Ct. Rec. 58-9.) In addition, the Certificate of Limited Partnership for Sisbro II filed with the state was substantially identical to the Sisbro I Certificate. (Ct. Rec. 58-10.) It was discussed that Gerald and Regina Lillie would take over Dennis' role of managing the now two stores. (Ct. Rec. 58: Decl. Regina Lillie ¶ 48.) As a result, Gerald and Regina Lillie, who previously had been full-time employees of United Air Lines based in San Francisco, California, either quit or reduced their hours to oversee the salons. (Ct. Rec. 60: Gerald Decl. ¶ 5; Ct. Rec. 58: Regina Decl. ¶ 49.)

In 1991, the business operations again expanded and the partners executed a Partnership Agreement of Sisbro III Limited Partnership ("Sisbro III Partnership Agreement"), to which Regina Lillie was not a party. (Ct. Rec. 58-11; Ct. Rec. 50: Paul D'Amato Decl. ¶ 9.) The Sisbro III Partnership Agreement identified Gerald as the general partner and stated "[t]he interest of Gerald Lillie is held by Gerald Lillie and Regina Lillie, husband and wife, as community property." (Ct. Rec. 58-11 ¶ 5.) This document is substantially similar to the Articles previously entered into; however, the salary provision is

ORDER -- 5

slightly different:

> The general *partner* shall be entitled to a salary of Seven and 50/100 Dollars ($7.50) per hour for time actually spent *in the management, supervision, and/or operation of the business*, which salary shall not exceed Three Hundred Dollars ($300.00) per week. Such salary shall be paid monthly. The general partner shall be entitled to reimbursement for all necessary out-of-pocket expenses incurred in conducting the business of the partnership. The time spent in attending training classes to learn the operation of the business shall not be included as salaried time.

*Id.* (emphasis added to show variations.)

In 1992, after Brian and Paul D'Amato reached the age of majority, PB Investment Co. ceased all business operations and the interests held by PB Investment Co. were equally divided between Brian and Paul. (Ct. Rec. 50: Paul D'Amato Decl. ¶ 11.) Also, in 1992, Regina Lillie and Gerald Lillie divorced. (Ct. Rec. 66 ¶ 2.)

Since 1991, the number of salons has expanded from three to nineteen salons in Washington and Idaho. *Id.* ¶ 15. Rather than enter into separate Articles for each store, the additional stores were opened up under either Sisbro I, Sisbro II, or Sisbro III Articles. Each SuperCuts and Cost Cutters hair cutting salon business employs a store manager. (Ct. Rec. 59: Regina Suppl. Decl. ¶ 1.) One regional (general) manager is employed who supervises all of the nineteen salon managers. *Id.* It is the standard in the hair salon industry for a general manager to only oversee six stores. *Id.* ¶ 2.

Regina Lillie and Gerald Lillie have been the partners who actively worked in the business and collected a salary. (Ct. Rec. 66 ¶ 20.) The other partners have been investment partners only. *Id.* The Lillies take a $300 weekly payment for each of the salons that they manage if they are listed as a general partner under the Sisbro Articles.

ORDER -- 6

Accordingly, Regina has taken a $300 weekly payment for all salons governed by Sisbro I and II Articles; while Gerald has taken a $300 weekly payment for all salons since 1982 as he is the only general partner under Sisbro III Articles. (Ct. Rec. 58: Regina Lillie Decl. ¶¶ 52 & 53; Ct. Rec. 60: Gerald Lillie Decl. ¶ 14.)

From 1982 to 1999, Gerald mailed financial statements to the partners, along with checks.[2] (Ct. Rec. 60: Gerald Lillie Decl. ¶ 8.) These tax statements identified the weekly salaries taken by the Lillies as "guaranteed payments." *Id.; see also* Ct. Rec. 63: Norma Kraus Decl. ¶ 4 & Ex. A. No objections were made to these guaranteed payments. Gerald Lillie quit sending partners financial statements in 1999. (Ct. Rec. 60: Gerald Lillie Decl. ¶ 9.)

**B.  Summary Judgment Standard**

Summary judgment is appropriate where the documentary evidence produced by the parties permits only one conclusion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-252 (1986). The party seeking summary judgment must demonstrate there is an absence of disputed issues of material fact to be entitled to judgment as a matter of law. Fed. R. Civ. Proc. 56(c). In other words, the moving party has the burden of showing no reasonable trier of fact could find other than for the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "A material issue of fact is one that affects the outcome of the litigation

---

[2] Paragraph 13 of the Articles included an "obligation to keep books and to provide all partners with income tax information after each calendar year."

ORDER -- 7

and requires a trial to resolve the parties' differing versions of the truth." *Lynn v. Sheet Metal Worker's Intern. Ass'n*, 804 F.2d 1472, 1483 (9th Cir. 1986) (quoting *Admiralty Fund v. Hugh Johnson & Co.*, 677 F.2d 1301, 1306 (9th Cir. 1982)).  The court is to view the facts and draw inferences in the manner most favorable to the non-moving party. *Anderson*, 477 U.S. at 255; *Chaffin v. United States*, 176 F.3d 1208, 1213 (9th Cir. 1999).

A burden is also on the party opposing summary judgment to provide sufficient evidence supporting his claims to establish a genuine issue of material fact for trial. *Anderson*, 477 U.S. at 252; *Chaffin*, 186 F.3d at 1213.  "[A] mere 'scintilla' of evidence will be insufficient to defeat a properly supported motion for summary judgment; instead, the nonmoving party must introduce some 'significant probative evidence tending to support the complaint.'"  *Fazio v. City & County of San Francisco*, 125 F.3d 1328, 1331 (9th Cir. 1997) (quoting *Anderson*, 477 U.S. at 249, 252).

**C.    Legal Authority and Analysis**

    1.    <u>Derivative action</u>

Both Washington and Idaho require the complaint in a derivative action to (a) set forth with particularity the effort made by the plaintiff to secure initiation of the sought after action by the general partner or (b) to set forth the reasons for not making such a demand.  RCW 25.10.580; Idaho Code 53-2-1004.  In addition, Federal Rule of Civil Procedure 23.1 has similar requirements, governing derivative actions by shareholders.  The Ninth Circuit stated in *H.M. Greenspun v. Del E. Webb Corp.*:

    The sufficiency analysis under Rule 23.1 looks to the

ORDER -- 8

sufficiency of the content of the demand and the sufficiency of the authority of those to whom the demand is presented. Thus, in order to find compliance with Rule 23.1, the district court must find that the content of the demand which Greenspun presented to Johnson and the general counsel was sufficient. It must also find that Johnson and the general counsel represented the "directors or comparable authority" to whom demand must be addressed under Rule 23.1. If either of these elements is lacking, the district court must then inquire whether a demand sufficient in content and presented to sufficient authority would have been futile.

634 F.2d 1204, 1210 (9th Cir. 1980).

The parties disagree as to whether the partnership(s) are still limited partnerships, or whether they were converted to a general partnership in 1992. Regardless, the Court finds the factual allegations in the Amended Complaint (Ct. Rec. 40) sufficiently show that a demand would be futile. Plaintiffs' allegations are that the Lillies, as general partners, overpaid themselves to their benefit, rather than to the benefit of the partnership; therefore, an effort to secure the sought after action would be futile in advance of the lawsuit. *See H.M. Greenspun*, 634 F.2d at 1210.

2. Breach of Contract

Plaintiffs D'Amatos contend Defendants Lillies significantly overpaid themselves salaries. To support their argument, Plaintiffs contend there is only one partnership, not three; and that a single $300 weekly payment is appropriate per general partner, who kept appropriate records. In response, Defendants Lillies submit there are actually three partnerships; and regardless, a $300 weekly payment is appropriate for each general partner for each *salon* that they managed/oversaw.

In analyzing the contract, the Court is to apply the law of the forum state to interpret a contract. *See Nelson v. Int'l Paint Co.*, 716 F.2d 640, 643 (9th Cir. 1983). Here, the Sisbro I and II documents

ORDER -- 9

relate to salons in Washington; while Sisbro III documents govern salons in Idaho. The Court determines it need not decide whether Washington or Idaho law applies because the Court reaches the same conclusion under both Washington and Idaho law.

In Washington, "[t]he interpretation of a contract is a matter of law properly decided on summary judgment." *Valve Corp. v. Sierra Entm't*, 431 F. Supp. 2d 1091, 1095 (W.D. Wash. 2004) (citing *United States v. King Features Entm't, Inc.*, 843 F.2d 394, 398 (9th Cir. 1988)). But, "[w]hen a court uses extrinsic evidence to interpret a contract, summary judgment is appropriate if only one reasonable meaning can be drawn from the extrinsic evidence." *Spectrum Glass Co., Inc. v. Pub. Util. Dist. No. 1 of Snohomish City*, 129 Wash. App. 303, 311-12 (2005).

A Washington Court of Appeals succinctly set forth the contract interpretation principles in *Spectrum Glass Co., Inc. v. Public Utility District No. 1 of Snohomish City*:

> A court's purpose in interpreting a written contract is to ascertain the parties' intent. To aid in ascertaining the contracting parties' intent, the court adopted the "context rule" in *Berg v. Hudesman*, 115 Wash. 2d 657, 667 (1990). Under the context rule, extrinsic evidence is admissible to assist the court in ascertaining the parties' intent and in interpreting the contract. The court may consider (1) the subject matter and objective of the contract, (2) the circumstances surrounding the making of the contract, (3) the subsequent conduct of the parties to the contract, (4) the reasonableness of the parties' respective interpretations, (5) statements made by the parties in preliminary negotiations, (6) usages of trade, and (7) the course of dealing between the parties. Such evidence is admissible regardless of whether the contract language is deemed ambiguous. Extrinsic evidence cannot be considered (a) to show a party's unilateral or subjective intent as to the meaning of a contract word or term; (b) to show an intention independent of the instrument; or (c) to vary, contradict, or modify the written word. "Extrinsic evidence is to be used to illuminate what was written, not what was intended to be written." "Unilateral or

ORDER -- 10

> subjective purposes and intentions about the meanings of what
> is written do not constitute evidence of the parties'
> intentions."

129 Wash. App. at 310-11 (internal citations omitted). In assessing the

contract, "Instruments which are part of the same transaction, relate to

the same subject matter and are executed at the same time should be read

and construed together as one contract, . . . ." *Turner v. Wexler*, 14

Wash. App. 143, 147 (1975).

In Idaho, the primary aim in:

> interpreting all contracts is to ascertain the mutual intent
> of the parties at the time their contract is made. That
> intent should, if possible, be ascertained from the language
> of the agreement, as the words used by the parties are deemed
> to be the best evidence of their intent. Thus, where the
> parties' intention is clear from the language of their
> contract, its interpretation and legal effect are to be
> resolved by the court as a matter of law.
>      However, where the parties' mutual intent cannot be
> understood from the language used, intent becomes a question
> for the trier of fact, to be ascertained in light of extrinsic
> evidence. If, after applying the ordinary processes of
> interpretation and considering the relevant extrinsic
> evidence, there remains doubt as to the actual, mutual intent
> of the parties, then the ambiguity should be resolved against
> the party who used the ambiguity in drafting the contract.

*Farnsworth v. Dairyman's Creamery Ass'n*, 125 Idaho 866, 870 (1994).

Applying these principles to the Sisbro partnership agreements, the

Court first must determine whether the language regarding salary cap is

clear as a matter of law; if it is, then the Court must grant

Plaintiffs' motion for summary judgment; if not, then the Court must

determine whether an examination of the extrinsic evidence submitted by

the parties so clarifies the intent of the parties that the Court can

determine it as a matter of law. If the extrinsic evidence does not so

clarify the parties' intent, then the Court must deny the motion for

summary judgment so that a jury may determine the intent of the parties

ORDER -- 11

using evidence under the *Berg* factors.  Having reviewed the salary cap language of these partnership agreements, the Court finds the language regarding the salary - "for time actually spent in the management, supervision, and/or operation of the business" is ambiguous; the following phrase in next sentence in the Sisbro I agreement relating to reimbursement of out-of-pocket expenses - "incurred in conducting the operation of the business" - does not add clarity.  Rather, it emphasizes the ambiguity.  Nor does resort to the language requiring a reserve of $20,000.00 in a different part of these same partnership agreements. (Ct. Recs. 58-4 & 58-9 ¶ 11.) Again, it adds ambiguity, not clarity.  Accordingly, the Court now turns to the extrinsic evidence to determine if the parties' intent is clear as a matter of law.

The documentary evidence produced by the parties admissible on the issue of intent of the parties as reflected in the language of these agreements includes the 1981 letter from Anthony D'Amato.  It explicitly states:

> By making your own salaries equal to his, I think we will preserve fairness.  The enclosed agreement reflects our discussions that no one at this point will get any special treatment.  You both are taking all the risk, so normally you would get some special consideration (e.g., a larger share of the profits).  But since this is one store, and for all the reasons we discussed in Dennis' living room, it might be the better part of wisdom for everyone to be treated the same.

(Ct. Rec. 58-2: December 19, 1981 letter.)  From this language, it could reasonably be interpreted that the parties intended to change the salary of the Lillies if more salons were added.  Additionally, the 1983 Anthony D'Amato letter to prospective investors in the salon business could be interpreted to express the intent of the parties that additional salons would entitle the Lillies to additional salary per

ORDER -- 12

salon.  The Court has also considered the other extrinsic evidence: the fact that the Sisbro III Partnership did not include language limiting the salary provision to a single salon despite the existence of several salons at that time and the evidence of salon industry custom that the stated weekly salary was to be paid to the general partner for each salon.  Having fully considered all of the extrinsic evidence and reasonable inferences therefrom, the Court concludes there is a genuine issue of material fact as to the intent of the parties regarding the Lillies' salaries that must be decided by a jury.

For the above given reasons, **IT IS HEREBY ORDERED:**  Plaintiffs' Motion for Partial Summary Judgment **(Ct. Rec. 49)** is **DENIED.**

**IT IS SO ORDERED:**   The District Court Executive shall enter this Order and forward copies to counsel.

**DATED** this  8th  day of June, 2007.


                          s/Edward F. Shea
                         EDWARD F. SHEA
                 UNITED STATES DISTRICT JUDGE

Q:\Civil\2006\0314.deny.p.msj.wpd

ORDER -- 13