UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| BRIAN D'AMATO and PAUL D'AMATO, as partners of SIBRO I, SISBRO II, and SISBRO III,<br><br>　　　　　　　　Plaintiffs,<br><br>　　　v.<br><br>REGINA LILLIE and GERALD LILLIE, as partners of SISBRO I, SISBRO II, and SISBRO III,<br><br>　　　　　　　　Defendants. | NO. CV-06-0314-EFS<br><br>**ORDER GRANTING AND DENYING IN PART PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT RE: BREACH OF CONTRACT PARAGRAPH NO. 10** |

On May 5, 2008, a hearing was held in the above-captioned matter. Michael Tucker and Robert Dunn appeared on behalf of Plaintiffs Brian and Paul D'Amato; Stephen Phillabaum appeared on behalf of Defendants Regina and Gerald Lillie. Before the Court was Plaintiffs' Motion for Partial Summary Judgment Re: Breach of Contract Paragraph No. 10. (Ct. Rec. 129.)[1] Plaintiffs ask the Court to find no genuine issue of

---

[1] Also, before the Court, was Defendants' Motion to Strike Affidavit of Anthony D'Amato in Support of Motion for Partial Summary Judgment Re: Breach of Contract Paragraph No. 10. (Ct. Rec. 166.) In advance of the hearing, the Court advised counsel of its rulings on the motion to strike. These rulings are contained in a separate

ORDER -- 1

material fact exists regarding their claim that Defendants breached Paragraph 10 of the SISBRO partnership agreements. Defendants oppose the motion. After reviewing the submitted material and relevant authority and hearing from counsel, the Court is fully informed; this Order supplements and memorializes the Court's oral ruling granting and denying in part Plaintiffs' motion.

**A.    Statement of Facts[2]**

On March 24, 1982, the Articles of SISBRO Limited Partnership (SISBRO I), which named Regina and Gerald Lillie as general partners, was executed. (Ct. Rec. 165: Joint Statement of Facts ¶ 1.) Paragraph 10 of the SISBRO I Articles states:

> 10. Salary of General Partners. The general partners shall be entitled to a salary of SEVEN DOLLARS AND 50/100 CENTS ($7.50) per hour for <u>time actually spent</u> in the supervision and/or operation of the business, which salary shall not exceed THREE HUNDRED AND NO/100 DOLLARS ($300.00) per week. Salaries shall be paid monthly. In addition the general partners shall be entitled to reimbursement for all necessary out-of-pocket expenses incurred in conducting the business of the partnership. The time spent in attending training classes to learn the operation of the business shall not be included as salaried time.

*Id.* (emphasis added). The Certificate of Limited Partnership of SISBRO

---

Order. (Ct. Rec. 196.)

[2] In ruling on this motion for summary judgment, the Court considered the facts and all reasonable inferences therefrom as contained in the submitted affidavits, declarations, exhibits, depositions, and the parties' Joint Statement of Uncontroverted Facts (Ct. Rec. 165) in the light most favorable to Defendants, the party opposing the motion. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1972) (*per curiam*). The following factual recitation was created utilizing this standard.

ORDER -- 2

I provides, "The character of the business to be transacted by the limited partnership would be the management, maintenance, and operation of a haircutting salon" (hereinafter, the articles and the certificate are collectively referred to as "the partnership documents"[3]). *Id.* ¶ 2. There was no discussion regarding the impact of future salons on the SISBRO I partnership documents, including Paragraph 10. (Ct. Rec. 134 Ex. A: Gerald Lillie Dep: 39:18-21.)

In 1982, the partnership paid Dennis Lillie $8,065 to manage, operate, and open the first salon. (Ct. Rec. 165 ¶ 6.) Gerald and Regina Lillie did not require Dennis Lillie to record or confirm the hours he worked; and Anthony D'Amato did not suggest to Gerald or Regina Lillie that Dennis Lillie record the hours he worked. (Ct. Rec. 158: Regina Lillie Decl. ¶ 25.) Following Dennis Lillie's death in March 1984, Gerald Lillie began working part time for SISBRO I, and Cathy Nelson performed bookkeeping tasks as an independent contractor. (Ct. Rec. 165 ¶¶ 8 & 9.)

On November 20, 1984, the Articles of the SISBRO II Limited Partnership (SISBRO II), which listed Gerald and Regina Lillie as general partners, was executed for a second salon. *Id.* ¶ 3. Paragraph 10 of the SISBRO II Articles is identical to Paragraph 10 of SISBRO I; likewise, the Certification of Limited Partnership for SISBRO II identically defines the "character of the business" as SISBRO I's certification. *Id.* ¶¶ 2 & 3. Regina Lillie left her full-time position

---

[3] In assessing the contract, "Instruments which are part of the same transaction, relate to the same subject matter and are executed at the same time should be read and construed together as one contract, . . . ." *Turner v. Wexler*, 14 Wn. App. 143, 147 (1975).

ORDER -- 3

at United Airlines to manage the two SISBRO partnerships and salons. (Ct. Rec. 158: Regina Lillie Decl. ¶ 18.)

On October 4, 1991, the Partnership Agreement of SISBRO III for a limited partnership (SISBRO III), which listed only Gerald Lillie as a general partner, was executed for a third salon. (Ct. Rec. 165 ¶ 5.) Paragraph 10 of the SISBRO III partnership agreement (hereinafter, referred to as "SISBRO III Articles") varies slightly from Paragraph 10 of the SISBRO I and II Articles:

> 10. Salary of General Partner. The general *partner* shall be entitled to a salary of Seven and 50/100 Dollars ($7.50) per hour for time actually spent in the *management,* supervision and/or operation of the business, which salary shall not exceed Three Hundred Dollars ($300.00) per week. Such salary shall be paid monthly. The general partner shall be entitled to reimbursement for all necessary out-of-pocket expenses incurred in conducting the business of the partnership Time spent in attending training classes to learn the operation of the business shall not be included as salaried time.

*Id.* (emphasis added to note differences between Paragraph 10 of the SISBRO III Articles and the SISBRO I and II Articles).

Since 1991, the number of salons operated by the SISBRO partnerships expanded from three to nineteen in Washington and Idaho. (Ct. Rec. 66 ¶ 2.) Given the hassle associated with obtaining all of the signatures required to execute partnership documents, separate articles and certificates were not executed for the fourth through nineteenth salons; rather, these salons operate under either the SISBRO I, II, or III partnerships. (Ct. Rec. 32 Ex. B: Regina Lillie Dep. 37:18 - 38:21.)

Since the inception of SISBRO in 1982, the partnerships have paid over $2,253,555 as "guaranteed payments" to Dennis, Regina, and Gerald Lillie. (Ct. Rec. 165 ¶ 10.) Gerald and Regina Lillie have been the partners who actively worked the business (Ct. Rec. 59: Regina Lillie

ORDER -- 4

Suppl. Decl. 2:4 - 3:3); the other partners have been investment partners only. The Lillies took a $300.00 weekly payment for each of the salons they oversaw if they are listed as a general partner under the SISBRO Articles. Accordingly, Regina Lillie was paid $300.00 per week for each of the salons governed by the SISBRO I and II Articles; while, Gerald Lillie was paid $300.00 per week for each of the salons because he is a general partner under all of the SISBRO Articles. (Ct. Rec. 58: Regina Lillie Decl. ¶¶ 52 & 53; Ct. Rec. 60: Gerald Lillie Decl. ¶ 14.) Gerald and Regina Lillie, who do not dispute that a general partner must work in order to receive payment under Paragraphs 10, did not record the hours they worked for the partnerships and/or salons and testified there is no way to reconstruct the hours they worked since 1984. (Ct. Rec. 134 Ex. A: Gerald Lillie Dep. 51:10-17 & 70:22 - 71:6; Ct. Rec. 32 Ex. B: Regina Lillie Dep. 50:11-23.) Except when dealing with a particular salon problem, the work done by Gerald and Regina Lillie benefitted all of the salons. (Ct. Rec. 158: Regina Lillie Decl. 2:12-14; Ct. Rec. 134: Regina Lillie Dep. 51:19 - 54:4.)

From 1982 to 1999, Gerald Lillie mailed financial statements to the partners, along with checks. (Ct. Rec. 60: Gerald Lillie Decl. ¶ 8.) These statements identified the Lillies' weekly salaries as "guaranteed payments." *Id.; see also* Ct. Rec. 63: Norma Kraus Decl. ¶ 4 & Ex. A. No objections were made to these guaranteed payments. Gerald Lillie quit sending financial statements to the partners in 1999. (Ct. Rec. 60: Gerald Lillie Decl. ¶ 9.)

Gerald and Regina Lillie are entitled to 72% of all distributions by the SISBRO partnerships. (Ct. Rec. 165 ¶ 11.) Due to Gerald and Regina Lillie's hands-on approach to managing the salons, they were able

ORDER -- 5

to avoid hiring a number of mid-level managers, thereby keeping expenses low and increasing dividends to the partners. (Ct. Rec. 158: Regina Lillie Decl. ¶ 4.)

On June 8, 2007, the Court denied Plaintiffs' Motion for Partial Summary Judgment, "finding there exist genuine issues of material fact as to whether the contracting parties intended the $300 salary cap for the general partners to be limited to a single weekly payment for the entire partnership or a payment for each salon." (Ct. Rec. 70.) The parties then engaged in discovery and filed additional motions for summary judgment.

**B.   Summary Judgment Standard**

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). Once a party has moved for summary judgment, the opposing party must point to specific facts establishing that there is a genuine issue for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986). If the nonmoving party fails to make such a showing for any of the elements essential to its case for which it bears the burden of proof, the trial court should grant the summary judgment motion. *Id.* at 322. "When the moving party has carried its burden of [showing that it is entitled to judgment as a matter of law], its opponent must do more than show that there is some metaphysical doubt as to material facts. In the language of [Rule 56], the nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for trial.*'" *Matsushita Elec. Indus. Co. v. Zenith Radio*

ORDER -- 6

*Corp.,* 475 U.S. 574, 586-87 (1986) (citations omitted) (emphasis in original opinion).

When considering a motion for summary judgment, a court should not weigh the evidence or assess credibility; instead, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986). This does not mean that a court will accept as true assertions made by the non-moving party that are flatly contradicted by the record. *See Scott v. Harris,* 127 S. Ct. 1769, 1776 (2007).

**C.   Legal Authority and Analysis**

The Court applies the law of the forum state to determine whether Gerald and Regina Lillie breached Paragraph 10 of the SISBRO I, II, and III Articles by taking a $300.00 weekly salary without keeping a record of hours worked.[4] *See Nelson v. Int'l Paint Co.,* 716 F.2d 640, 643 (9th Cir. 1983). Here, the SISBRO I and II partnership documents relate to salons in Washington; while, the SISBRO III partnership documents govern salons in Idaho. Consistent with its prior Order (Ct. Rec. 70), the Court determines it need not decide whether Washington or Idaho law applies to the partnership documents because the Court reaches the same

---

[4] Although a court may typically interpret a contract as a matter of law on summary judgment, summary judgment is appropriate when extrinsic evidence is considered only if one reasonable meaning can be drawn from the extrinsic evidence. *Valve Corp. v. Sierra Entm't*, 431 F. Supp. 2d 1091, 1095 (W.D. Wash. 2004); *Spectrum Glass Co. v. Pub. Util. Dist. No. 1 of Snohomish City*, 129 Wn. App. 303, 311-12 (2005).

ORDER -- 7

conclusion under both Washington and Idaho law.

To interpret the partnership documents, the Court ascertains the parties' intent by using the "context rule." *Spectrum Glass Co. v. Pub. Util. Dist. No. 1 of Snohomish City*, 129 Wn. App. 303, 311-12 (2005) (citing *Berg v. Hudesman*, 115 Wn.2d 657, 667 (1990)); *see also Farnsworth v. Dairyman's Creamery Ass'n*, 125 Idaho 866, 870 (1994). The context rule allows the court to consider extrinsic evidence, including the following, to ascertain the parties' intent:

> (1) the subject matter and objective of the contract, (2) the circumstances surrounding the making of the contract, (3) the subsequent conduct of the parties to the contract, (4) the reasonableness of the parties' respective interpretations, (5) statements made by the parties in preliminary negotiations, (6) usages of trade, and (7) the course of dealing between the parties. Such evidence is admissible regardless of whether the contract language is deemed ambiguous.

*Spectrum Glass Co.*, 129 Wn. App. at 310-11 (internal citations omitted). The purpose of extrinsic evidence is to "illuminate what was written, not what was intended to be written." *Id.* Therefore, extrinsic evidence cannot be used: "(a) to show a party's unilateral or subjective intent as to the meaning of a contract word or term; (b) to show an intention independent of the instrument; or (c) to vary, contradict, or modify the written word." *Id.*

After considering the language of Paragraphs 10 and the extrinsic evidence submitted by the parties, the Court concludes, as a matter of law, that Paragraphs 10 require the general partner to "work;" therefore, Plaintiffs' motion is granted in part. However, the remainder of Plaintiffs' motion is denied. First, Gerald and Regina Lillie testified that they actually spent time "in the supervision and/or operation of the business." (SISBRO Articles ¶ 10.) Second, the

ORDER -- 8

Court finds there is more than one reasonable interpretation of the phrase, "per hour for time actually spent in the supervision and/or operation of the business." *Id.* One reasonable interpretation is that proposed by Plaintiffs, i.e. the general partner was required to keep a time record in order to take a salary commiserate with that record. However, another reasonable interpretation of this phrase, is that proposed by Defendants, i.e. the general partner had to work to take a salary, however, time records need not be kept. This interpretation is supported by the subsequent conduct of the parties to the partnership agreements. It is undisputed that the partners did not ask for verification of hours worked by the Lillies even though the distributed financial records indicated that the Lillies took "guaranteed payments" consistent with a $300.00 weekly salary per salon.

For these reasons, the Court finds genuine issues of material fact exist; Plaintiffs' motion is denied in part. At trial, the jury must determine whether the parties intended to require a general partner to keep a record of hours worked in order to take the calculated salary. If the jury determines the parties so intended, then Gerald and Regina Lillie breached Paragraphs 10 by taking a salary without a record of hours worked. However, if the jury determines it was not the parties' intent to require a record of hours worked, the jury must then, in addition to determining whether the Lillies "worked," determine whether a general partner's work time could be credited to more than one partnership and/or salon ("a common benefit to all"), i.e. whether eight hours of work benefitting all of the SISBRO partnerships could account for eight hours of work for each of the salons, thereby totaling 152 hours.

ORDER -- 9

For the above given reasons, **IT IS HEREBY ORDERED:** Plaintiffs' Motion for Partial Summary Judgment Re: Breach of Contract Paragraph No. 10 **(Ct. Rec. 129)** is **GRANTED IN PART** (general partner must work in order to take a salary) **and DENIED IN PART** (whether general partner was required to keep record of hours worked).

**IT IS SO ORDERED:** The District Court Executive shall enter this Order and forward copies to counsel.

**DATED** this __20th__ day of May 2008.


                              S/ Edward F. Shea
                              EDWARD F. SHEA
                 UNITED STATES DISTRICT JUDGE

Q:\Civil\2006\0314.msj.para10.wpd

ORDER -- 10