UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

BRIAN D'AMATO and PAUL D'AMATO,
as partners of SIBRO I, SISBRO
II, and SISBRO III,

                Plaintiffs,

         v.

REGINA LILLIE and GERALD LILLIE,
as partners of SISBRO I, SISBRO
II, and SISBRO III,

                Defendants.

NO.  CV-06-0314-EFS

**ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT DETERMINING CLAIMS BARRED BY THE DOCTRINE OF LACHES AND STATUTE OF LIMITATIONS**

Before the Court, without oral argument, is Defendants Gerald and Regina Lillie's Motion for Summary Judgment Determining Claims Barred by the Doctrine of Laches and Statute of Limitations.  (Ct. Rec. 106.) Plaintiffs oppose the motion, contending there are genuine issues of material fact that preclude summary judgment.  After reviewing the submitted material and relevant authority, the Court is fully informed and denies Defendants' motion.

///

///

///

///

ORDER -- 1

**A.     Statement of Facts[1]**

    1.    Sisbro I

    In 1981, Anthony D'Amato[2] recommended to Gerald and Regina Lillie that they establish a SuperCuts hair cutting salon business (hereinafter referred to as "salon"). (Ct. Rec. 185 ¶ 1.)  At that time, the Lillies resided in California and worked full-time for United Airlines Lines (UAL).  *Id.* ¶¶ 2 & 3.  On December 19, 1981, Anthony D'Amato followed up on his recommendation with a letter recommending forming a limited partnership for the establishment of a single salon and included a draft partnership agreement.  *Id.* ¶ 5.

    In March 1982, the Sisbro Limited Partnership ("Sisbro I") was formed.  *Id.* ¶ 7.  The Sisbro I partners were Gerald and Regina Lillie (holding a 65% ownership interest), Dennis and Gale Lillie (holding a 10% interest), Robert and Norma Kraus (holding a 5% interest), and PB Investment Co. (holding a 20% interest). *Id.* ¶ 8.  Gerald and Regina Lillie are the general partners.

    On or about April 1, 1982, Sisbro I opened a SuperCuts salon in

---

    [1]  In ruling on this motion for summary judgment, the Court considered the facts and all reasonable inferences therefrom as contained in the submitted affidavits, declarations, exhibits, depositions, and the parties' Joint Statement of Uncontroverted Facts (Ct. Rec. 185) in the light most favorable to Plaintiffs, the party opposing the motion. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1972) (*per curiam*).  The following factual recitation was created utilizing this standard.

    [2]  Anthony D'Amato is Regina Lillie's brother and the father of Paul and Brian D'Amato.  (Ct. Rec. 185 ¶ 4.)

ORDER -- 2

Spokane, Washington. *Id.* ¶ 20.  Sisbro I paid Dennis Lillie $8,065.00 to manage the Spokane SuperCuts; his pay was based on the amount of hours that he worked.

2.  PB Investment Co.

PB Investment Co. was comprised of then-minors Paul and Brian D'Amato and their mother, Barbara D'Amato.  *Id.* ¶ 9.  Anthony D'Amato monitored the investments to see how they were doing and made decisions pertaining to PB Investment Co. with his wife Barbara's approval.  *Id.* ¶¶ 10 & 11.

PB Investment Co. ceased in approximately 1992, with the assets being transferred to Paul and Brian D'Amato.  *Id.* ¶¶ 15 & 16.  Before dissolution, neither Paul nor Brian D'Amato were part of the negotiations or investment discussions related to PB Investment Co. and had nothing to do with the organization or start up of Sisbro.  *Id.* ¶¶ 12 & 13.  In fact, it was not until approximately 1991 that Paul D'Amato become knowledgeable about Sisbro; at this time, Paul D'Amato neither asked nor received PB Investment Co. or Sisbro financial statements. *Id.* ¶¶ 14 & 17.  Likewise, Brian D'Amato never received any financial statements or tax returns regarding PB Investment Co. *Id.* ¶ 18.

3.  Sisbro II

Gerald and Regina Lillie proposed forming a second limited partnership called Sisbro II and to open a second salon.  *Id.* ¶ 22. Sisbro II was formed in December of 1983, with the partner and ownership interests in Sisbro II mirroring that of Sisbro I. *Id.* ¶¶ 25 & 26. However, following Dennis Lillie's death in March 1994, Gale Lillie sold her Sisbro I and Sisbro II shares back to the partnerships by signing a

ORDER -- 3

sale agreement dated May 14, 1984.[3]  *Id.* ¶¶ 27 & 35.  Revised Articles of Limited Partnership and revised Certificates of Limited Partnership reflecting the ownership change for Sisbro I and Sisbro II were signed by the partners.[4]  *Id.* ¶ 36.  The new partnership ownership interests were allocated as follows:  Gerald and Regina Lillie at 72%; Robert and Norma Kraus at 6%; and PB Investment Co. at 22%.  *Id.* ¶ 38.  The business of Sisbro I and Sisbro II, i.e. "the management, maintenance, and operation of a hair cutting salon," remained unchanged. *Id.* ¶ 40.

### 3.  Sisbro I and II Operations

Following Dennis Lillie's death in March 1984, Gerald and Regina Lillie took over Sisbro I and II management and operation duties, and Cathy Nelson took over the bookkeeping duties, previously performed by Dennis Lillie.  In approximately April 1984, in order to devote more time to Sisbro, Gerald and Regina Lillie rented an apartment in Spokane; Regina Lillie stopped working for UAL[5]; and Gerald Lillie shifted from full-time to part-time status with UAL.  *Id.* ¶¶ 30 & 31.

On or about April 1, 1984, Sisbro II, with Gerald and Regina Lillie as general partners, opened a salon in Spokane. *Id.* ¶¶ 32 & 39.  On or about April 1, 1986, Sisbro I opened a second salon. *Id.* ¶ 41.  Then, on or about November 11, 1989, Sisbro II opened a second salon.  *Id.* ¶ 42. ///

---

[3]  Anthony D'Amato signed the sale agreement on behalf of PB Investment Co.  *Id.* ¶ 35.

[4]  Barbara D'Amato signed each of the foregoing documents on behalf of PB Investment Co. *Id.* ¶ 37.

[5]  At this time, Regina Lillie was the subject of a misconduct investigation at UAL.

ORDER -- 4

4.  Sisbro III

In 1991, Gerald and Regina Lillie determined that opening a salon in north Idaho would be beneficial. *Id.* ¶ 43.  Regina Lillie discussed this with Anthony D'Amato, who advised her that an Idaho limited partnership should be formed using the same format as used by Sisbro I and Sisbro II. *Id.* ¶ 44.

The Sisbro III Limited Partnership ("Sisbro III") was formed by a Partnership Agreement dated October 2, 1991. *Id.* ¶ 45.  The partnership ownership interest mirrored Sisbros I and II (Gerald and Regina Lillie at 72%, Robert and Norma Kraus at 6%, and PB Investment Co. at 22%). *Id.*  However, unlike Sisbro I and II, Gerald Lillie was the only managing general partner of Sisbro III.  *Id.* ¶ 47.

On or about November 4, 1991, Sisbro III opened a salon in Coeur d' Alene, Idaho.  (Ct. Rec. 185 ¶ 48.)

The Articles of Limited Partnership for Sisbro I and Sisbro II did not prevent Gerald and Regina Lillie from operating salons outside of Washington. *Id.* ¶ 53.  If they had known that Paragraphs 10 of the Sisbro partnership agreements limited their total compensation to $300.00 per week regardless of the number of salons they operated, they would have expanded into the Idaho market without limited partners. *Id.* ¶ 54.

5.  Sisbro Operations

From November 1995 through March 2002, Sisbro I opened five (5) additional salons, and closed the original salon. *Id.* ¶ 52.  From February 1995 through October 2001, Sisbro II opened seven (7) additional salons. *Id.* ¶ 55.  From April 1999 through January 2002, Sisbro III opened four (4) additional salons. *Id.* ¶ 56.  There are

ORDER -- 5

currently nineteen (19) salons - operating either under the Supercuts or Cost Cutters name - owned by the three Sisbro partnerships and operating under one of the Sisbro I, II, or III limited partnerships. *Id.* ¶¶ 57, 58, 59.

On or about October 1, 2002, Gerald Lillie quit his job at UAL and took early retirement in order to devote all his time to operating and managing the partnerships and the salons. *Id.* ¶ 49.

6. <u>Documentation</u>

The parties dispute whether Gerald Lillie mailed financial documents to PB Investment Co. prior to its dissolution and then to Paul and Brian D'Amato between 1992 and 1999. *Id.* ¶ 83. Regardless, the parties agree that K-1s, a tax form for individual partners, were received by PB Investment Co. and subsequently by Paul and Brian D'Amato. *Id.* ¶ 61. Any documentation received by Anthony D'Amato on behalf of PB Investment Co. would have been disposed of, and he admits not opening or reviewing half the mail he receives. *Id.* ¶¶ 81 & 82. Paul and Brian D'Amato did not look at the Sisbro material received before providing the K-1s to their accountant. *Id.* ¶ 61, 71, & 74. Brian D'Amato has never asked for information about Sisbro, *id.* ¶ 72; Paul D'Amato may have requested a copy of a tax return, *id.* ¶ 89. Norma Kraus received financial documentation for the salons from time to time. (Ct. Rec. 63: Kraus Decl. 1:24-25.)

Between 1991 and 2005, Paul D'Amato did not discuss the Sisbro entities, including the compensation plan for Regina and Gerald Lillie, with Anthony D'Amato, and did not make any effort to learn what it was. (Ct. Rec. 185 ¶¶ 86 & 111.) Before this lawsuit, Brian D'Amato had little understanding about who was managing the partnerships, or whether

ORDER -- 6

the managers were being paid.  *Id.* ¶ 116.

7.   D'Amatos' Other Salon Interests

Anthony, Paul, and Brian D'Amato have had interests in approximately eighty (80) salons over the past thirty (30) years. *Id.* ¶ 91.  As a result of their education and experience, Anthony and Paul D'Amato understand the economics behind the salon business.  *Id.* ¶ 90.

Paul D'Amato, who received a degree from the University of Illinois in 1992 with a minor in business, started and operated SuperCuts and Cost Cutters salons from 1991 until 2006.  *Id.* ¶¶ 92 & 94.  During this time, he performed functions including site selection, store performance, financial review, compensation, planning, and marketing. *Id.* ¶ 95.  His education helped him prepare and evaluate financial statements for these businesses.  *Id.* ¶¶ 93 & 96.  He ultimately sold the SuperCuts and Cost Cutters assets he managed, consisting of forty-three (43) salons, to Regis in 2006. *Id.* ¶ 97.  Paul also receives financial statements from Cara Kugelard for an entity that operates salons in which he holds a financial interest; yet, he does not review these financial statements. *Id.* ¶¶ 98 & 99.  He also does not review the periodic financial statements that he receives for Rainbow Group, Inc., another business he has an interest in. *Id.* ¶¶ 100 & 101.

8.   Dispute

Plaintiffs allege that Gerald and Regina Lillie (1) breached the partnership agreements by accepting salaries greater than provided by the partnership agreements thereby reducing partnership profits and (2) breached fiduciary duties by accepting salaries greater than provided by the partnership agreements, by not providing tax returns and financial statements, and by not repaying withheld profits. *Id.* ¶¶ 119

ORDER -- 7

& 120.    The Court concluded that the jury is to determine what the parties intended in Paragraphs 10 of the Sisbro partnership agreements:

> 10.    Salary of General Partners.    The general partners shall be entitled to a salary of SEVEN DOLLARS AND 50/100 CENTS ($7.50) per hour for time actually spent in the supervision and/or operation of the business, which salary shall not exceed THREE HUNDRED AND NO/100 DOLLARS ($300.00) per week. Salaries shall be paid monthly.    In addition the general partners shall be entitled to reimbursement for all necessary out-of-pocket expenses incurred in conducting the business of the partnership.    The time spent in attending training classes to learn the operation of the business shall not be included as salaried time.

(Ct. Recs 70 & 246 (Sisbro I and II partnership agreements ¶ 10; Sisbro III partnership agreement ¶ 10 varies slightly)).    Although Plaintiffs contend the Lillies breached Paragraphs 10 and that the maximum annual amount the Lillies are entitled to is $15,600.00, based upon a 40-hour work week for 52 weeks a year, neither Paul nor Brian D'Amato know whether the Lillies thought they were being paid more money than they should have been paid.    *Id.* ¶¶ 102, 103, 117.

Anthony D'Amato believed that Gerald and Regina Lillie had only $5,000.00 to $10,000.00 to invest in 1981.    *Id.* ¶ 104.    In approximately 1995, Anthony D'Amato believed that Gerald and Regina Lillie substantially renovated a recently-purchased mansion, and that Gerald Lillie purchased an apartment.    *Id.* ¶ 107.    From 1981 to 1997, Anthony D'Amato and Regina Lillie discussed the affairs, plans, and strategies of the Sisbro business through telephone conversations and personal meetings.    *Id.* ¶ 89.

In 1997, Anthony D'Amato stopped speaking with Regina Lillie.    *Id.* ¶ 108.    He claims that, in the conversation that terminated their relationship, he asked Regina Lillie about the company's low bottom line.    *Id.* ¶ 109.    Regina Lillie allegedly responded, "I don't need to

ORDER -- 8

tell you that kind of information." *Id.*  Anthony D'Amato also claims that she told him that she did not have to justify her business skills or methods to him.  *Id.*

**B.    Summary Judgment Standard**

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  Once a party has moved for summary judgment, the opposing party must point to specific facts establishing that there is a genuine issue for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986).  If the nonmoving party fails to make such a showing for any of the elements essential to its case for which it bears the burden of proof, the trial court should grant the summary judgment motion.  *Id.* at 322.  "When the moving party has carried its burden of [showing that it is entitled to judgment as a matter of law], its opponent must do more than show that there is some metaphysical doubt as to material facts.  In the language of [Rule 56], the nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for trial.*'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586-87 (1986) (citations omitted) (emphasis in original opinion).

When considering a motion for summary judgment, a court should not weigh the evidence or assess credibility; instead, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986).  This does not mean that a court will accept as true assertions

ORDER -- 9

made by the non-moving party that are flatly contradicted by the record. *See Scott v. Harris,* 127 S. Ct. 1769, 1776 (2007).

**C.    Legal Authority and Analysis**

Defendants argue that Plaintiffs' claims are barred by the doctrine of laches; in the alternative, Defendants maintain that Plaintiffs' claims should be limited by the applicable statute of limitations.

1.    Laches

Laches - a fact-dependent equitable remedy that bars untimely claims - is an "extraordinary remedy to prevent injustice and hardship . . . ." *Barber v. Barber*, 106 Wn. App. 390, 397 (2001); *Brown v. Continental Can Co.*, 765 F.2d 810, 814 (9th Cir. 1985). Laches applies if (1) the claimant had knowledge of the facts constituting the cause of action, or a reasonable opportunity to discover such facts, (2) the claimant then unreasonably delayed in commencing the action, and (3) defendant was damaged by the delay. *Barber*, 106 Wn. App. at 397.

Viewing the evidence in Plaintiffs' favor, the Court concludes there are genuine issues of material fact as to whether Plaintiffs unreasonably delayed in filing the lawsuit. First, the Court finds genuine issues of material fact exist as to whether PB Investment Co. or Brian and Paul D'Amato received financial statements evincing the "guaranteed payments" as payments to the Lillies for their managing services, rather than payments for the use of their capital. *See* Klig and Sloan, 712-2nd T.M., *Partnerships - Taxable Income; Allocation of Distribute Shares; Capital Accounts*, at A-107 - A-112. Gerald Lillie contends that he mailed financial statements to the partners following the end of each quarter and at the end of each year from 1982 to 1999. (Ct. Rec. 109: Gerald Lillie Decl. ¶ 3.) This statement is supported

ORDER -- 10

by Norma Kraus.   However, neither Anthony, Brian, nor Paul D'Amato remember receiving financial statements and they contend the K-1s fail to evince that the "guaranteed payments" were payments for the Lillies' managing services.  The jury will need to assess the credibility of the witnesses and resolve when a reasonable person would have known, or have reason to know, the facts supporting Plaintiffs' causes of action.

Defendants rely on the fact that Anthony and Barbara D'Amato had a conversation with Allen Sager, another individual who holds interests in SuperCuts franchises, in 1992.   This conversation involved a discussion that the profits in the SuperCuts franchises managed by the Lillies were not as high as they should be.   However, there is no evidence that either Anthony or Barbara D'Amato shared this conversation or their concerns with their sons before this lawsuit. (Ct. Rec. Ex. F: Paul D'Amato Dep. 95:6-8.)

Accordingly, the Court determines genuine issues of material fact exist as to whether Plaintiffs unreasonably delayed in bringing this lawsuit after learning, or reasonably should have known of, the facts constituting their breach of contract and breach of fiduciary duty claims.   Likewise, genuine issues of material fact exist as to whether Defendants, who left their positions at UAL and were not required to open up the Idaho salons with these same partners, were injured by this claimed delay.  Defendants' motion is denied in part.

2.   Statute of Limitations and Diversion of Profits

a.   *RICO claims*

Following the filing of Defendants' motion, the parties agreed to dismiss Plaintiffs' RICO claims.  (Ct. Recs. 174 & 179.)  Accordingly, Defendants' motion to limit Plaintiffs' RICO claims is denied as moot.

ORDER -- 11

   b.   *Breach of Fiduciary Duty*

   Plaintiffs' breach of fiduciary duty cause of action is subject to a three-year statute of limitations in Washington, RCW 4.16.080(2)[6], and a four-year statute of limitations in Idaho, Idaho Code 5-224[7].    In Washington, an action to recover an overpayment of profits is governed by the three-year statute of limitations imposed by RCW 4.16.080(2)[8]; while in Idaho, a diversion of profits claim is subject to a four-year statute of limitations, Idaho Code 5-224.   The Washington statute of limitations begin to accrue when a reasonable person knew, or should have known of, the facts supporting the cause of action.   *Hudson v. Condon*, 101 Wn. App. 866, 973 (2000); *First Md. Leasecorp v. Rothstein*, 72 Wn. App. 278, 286 (1993); 136 A.L.R. 658.    The Idaho statute of limitations begins to accrue when the first act of negligence occurred and when Plaintiffs first suffered damage.   *See Jones v. Kootenai County Title Ins. Co.*, 125 Idaho 607, 614 (1994).   As set forth above, the Court finds genuine issues of material fact exist as to when Plaintiffs knew, or reasonably should have known of, the basis for their Washington causes of action.   In addition, the jury must determine when Brian and Paul D'Amato first suffered damage as a result of Gerald and Lillie's negligence, if any.   Accordingly, Defendants' motion is denied in part.

**D.   Conclusion**

   For the above-given reasons, **IT IS HEREBY ORDERED:**   Defendants'

---

   [6]   *Hudson v. Condon*, 101 Wn. App. 866, 873 (2000).

   [7]   *Jones v. Kootenai County Title Ins. Co.*, 125 Idaho 607, 614 (1994).

   [8]   *Halver v. Welle*, 44 Wn.2d 288, 295 (1954).

ORDER -- 12

1  Motion for Summary Judgment Determining Claims Barred by the Doctrine
2  of Laches and Statute of Limitations **(Ct. Rec. 106)** is **DENIED.**

3      **IT IS SO ORDERED:**   The District Court Executive shall enter this
4  Order and forward copies to counsel.

5      DATED this   29th   day of May 2008.

6

7
                          S/ Edward F. Shea
8  _____
                          EDWARD F. SHEA
                    UNITED STATES DISTRICT JUDGE
9

10  Q:\Civil\2006\0314.msj.laches.wpd

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28  ORDER -- 13